**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3360-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOY J. JEFFERSON, a/k/a
JOY J. JEFFESON,

     Defendant-Appellant.

_____

Submitted February 13, 2023 – Decided July 5, 2024

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 13-08-1054.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Nancy A. Hulett, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Defendant Joy J. Jefferson appeals from the March 15, 2021 order of the Law Division denying her petition for post-conviction relief (PCR) after an evidentiary hearing. We affirm.

## I.

Defendant's convictions arose from events involving several young women and their relatives on April 9, 2013. At the time, Samantha Smikle's daughter T.S. was fourteen and her daughter T.M. was eleven.[1] Jievonnie Couch's daughter, N.G., was approximately the same age as T.S. N.G. and T.S. are friends.

Smikle drove to T.S.'s school to pick up her daughter. T.M. was in the car with her mother. Soon after she arrived, Smikle saw T.S. and N.G. walking with a group of girls who looked like they "wanted to fight" behind them. When T.S. and N.G. turned around, a fight ensued. One of the girls fighting T.S. and N.S. was T.P. T.P. is the niece of defendant and Velicia Odum, who are sisters.

Both Smikle and T.M. exited Smikle's car. Ultimately, Smikle was able to get both of her daughters and N.G. away from the fight and into her car. She

---

[1] We use initials to protect the identity of the minors mentioned herein.

drove the children home, where Couch was waiting for her daughter. Smikle told Couch about the fight and the two decided to talk to the parents of the other girls involved in the altercation. Although Smikle did not know the parents' addresses, T.S. told her they lived in the Roosevelt Village apartment complex in Carteret.

Smikle took Couch, N.G., Smikle's daughters, and Smikle's adult son TyQuan Robinson, to Roosevelt Village. When they arrived, Couch recognized a woman whom she had met at the girls' school earlier that day. The woman, who was later identified as Odum, was on a cellphone yelling. Based on what Smikle heard Odum saying, she believed Odum was the parent of one of the girls involved in the fight.

Smikle walked up to Odum and said "they didn't jump your daughter. I'm one of the parents and I just wanted to talk to you. All of this has to stop." Although Smikle's demeanor was calm, Odum's was not. She continued to yell, curse and scream. After about five minutes of unproductive conversation with Smikle, Odum left the area and entered her apartment.

The apartment was close enough that Smikle could hear what sounded like a drawer opening and "a whole bunch of dishes" emanating from the apartment. She told her children to leave. As they were running to Smikle's car, Odum

A-3360-20

exited the apartment and punched Smikle in the face. The women were separated by Robinson and Odum's husband.

As Smikle was walking toward her car, she saw Robinson and Odum's husband fighting. Smikle grabbed her son and attempted to get him to return to the car with her.

At that point, Odum grabbed Smikle by the hair and began hitting her. As Odum was hitting her, Smikle heard a voice and saw a woman she later identified as defendant wearing a pink shirt and a grey hat. The woman said to Smikle, "yeah, jump my niece." After hearing that remark, Smikle started feeling weak, turned around to face the woman in pink and grey and fell to her knees. Smikle felt herself being hit by Odum and defendant while she was on her knees.

Couch grabbed Smikle and helped her to stand up and walk toward the car. When Couch intervened, the two women stopped hitting Smikle and started walking toward Odum's apartment. Smikle felt her left arm and noticed she was bleeding. She had an open wound on her wrist and arm from being slashed with a razor or other sharp object. Smikle's injuries required sixty-nine stitches to close. Smikle was left with scars, numbness, lingering pain, and involuntary twitching. She testified that she has little strength in her hand and that she experiences pain when she grabs objects.

 A-3360-20

When police arrived on scene, Smikle told them that a woman standing on the porch in a pink shirt and grey hat had cut her. It is undisputed that defendant was wearing a pink shirt and grey hat during the altercation.

During the investigation, defendant gave a recorded statement to police during which she denied knowing that Smikle had been stabbed and stated that she did not injure Smikle in any way. She stated that she had tried to break up the fight between Odum and Smikle. However, defendant stated that she knew nothing about a knife, gun, or razor being used in the fight before the police mentioned that Smikle was slashed with a razor. While Odum admitted fighting with Smikle during a police interview immediately after the incident, she also denied responsibility for the stabbing.

A grand jury indicted defendant, charging her with second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d), and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d).

At trial, the State presented several witnesses who saw defendant directly confront Smikle and make slashing motions during the fight. T.M. testified that she saw defendant stab her mother. T.S. testified that she observed defendant armed with an eyebrow razor when she punched her mother. Smikle and a

5

witness heard defendant say "this is for my niece" or "this is for my nieces" before Smikle was slashed. Also, a videotape of the altercation depicted defendant near Smikle during the altercation. Smikle's blood was found on a sweater defendant was seen holding in her hand. Smikle identified defendant as her assailant at trial, although she had not done so in her statement to police. Couch testified that she observed a small, lime-green object in Odum's back pocket during the fight.

The defense strategy was that the State could not meet its burden due to a lack of evidence tying defendant to the stabbing. Trial counsel did not pursue a third-party guilt defense. Although Odum was on the defense witness list, she was not called to testify at trial. Defendant did not testify at trial.

The jury convicted defendant on all counts of the indictment. It found that defendant slashed Smikle on the arm and wrist with a small razor or other sharp object during the fight.

About two months after the verdict, Odum sent a letter to the prosecutor and a letter to the trial judge, dated four days apart. In the first letter, Odum said she wanted to "tell [her] story and my sister is innocent." In the second, she repeated, "[m]y sister is innocent." Odum added, "I am the one who cut [the victim] with a razor after she attacked me with a group of others." She

6

volunteered to take a polygraph. The trial court adjourned defendant's sentencing date to allow the defense to investigate Odum's claims.

The trial court subsequently sentenced defendant to an aggregate seven-year term of imprisonment, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

Seven months later, defendant moved for a new trial based on what she described as newly discovered evidence – her sister's purported confession. The trial court, applying the holding in State v. Carter, 85 N.J. 300 (1981), denied the motion. The court found that the evidence was not newly discovered because Odum's purported admission was available before trial and defendant failed to call Odum as a witness. In addition, the court found that Odum's statement was not likely to change the outcome of the trial because her claims were not plausible in light of the evidence against defendant. The court also observed that if Odum had testified at trial she would have been confronted by the State with her prior denial to police immediately after the stabbing.

We affirmed defendant's conviction and sentence. State v. Jefferson, No. A-2655-15 (App. Div. Aug. 14, 2018). We also affirmed the trial court's denial of defendant's motion for a new trial. While agreeing with the trial court's rationale for denying the motion, we added that Odum's statements were

"inherently self-serving and presumptively unreliable" because she claimed to have stabbed Smikle in self-defense, thereby shifting the blame to others. (slip op. at 7). The Supreme Court denied defendant's petition for certification. State v. Jefferson, 237 N.J. 189 (2019).

Defendant thereafter filed a petition seeking PCR. She alleged that her trial counsel was ineffective for failing to call Odum as a witness and failing to argue a third-party guilt defense.

The PCR court held an evidentiary hearing on defendant's petition. The judge who presided at defendant's trial also presided at the hearing. The two attorneys who represented defendant at trial, Odum, and defendant testified.

On March 15, 2021, the PCR court issued a written opinion denying the petition. After a detailed review of the witnesses' testimony, the PCR court noted that it "questioned" some of the rationale proffered by defendant's trial counsel for not calling Odum as a witness, i.e., that she could not do so until Odum retained counsel, and that Odum's statement was not actually a confession. In addition, the court questioned why defendant's trial counsel took no steps to corroborate or investigate Odum's statement.

"On the other hand," the PCR court continued, "there were significant reasons for [trial counsel] to believe she should not call Odum in this case." The court explained,

> Odum's credibility was in question given her close relationship with [defendant], and especially following her statement to police in which she denied cutting Smikle. The State could have, and would have, impeached Odum regarding her prior inconsistent statement to police. And the defense already had other viable trial theories: defense of others, that Smikle's arrival "looking for a fight" constituted adequate provocation, and that there were so many people in the melee that reasonable doubt existed as to [defendant's] guilt. If Odum's prospective testimony was not particularly credible, then even if it would not contradict the defense's trial theories it risked distracting from those theories and confusing the jury. Additionally, if Odum appeared incredible, then as [defendant's] sister Odum's lack of credibility risked bleeding into [defendant's] own reputation, and/or raising the possibility that the two fabricated Odum's story together, thereby unfavorably influencing the jury against [defendant].

In addition, the PCR court concluded that "even if [defendant's trial counsel] had taken more seriously Odum's stated willingness to exculpate [defendant], ultimately it is not clear what Odum's trial testimony would have been." The court noted that "[t]hough Odum testified unequivocally at the evidentiary hearing that she would have exculpated [defendant] at trial by inculpating herself, Odum failed to exculpate [defendant] or inculpate herself in

9

her initial police statement."  Thus, Odum "proved herself willing to give inconsistent statements regarding the case, solidifying the possibility that she would testify at trial inconsistent with her promise to exculpate [defendant]."

The PCR court concluded that "despite the general principle that a reasonable defense attorney should call exculpatory witnesses she is aware of and investigate possibly exculpatory witnesses, here there were notable reasons for [defendant's trial counsel] to believe she should not call Odum to testify at trial."

The PCR court also concluded that defendant did not establish that the outcome of her trial would have been different had her counsel called Odum as a witness.  "First," the PCR court noted, "it is unclear what impact Odum's testimony could have made because it is unclear what Odum's testimony would have been . . . ."  Second, the court found that "even assuming Odum would have tried to exculpate [defendant] at trial by inculpating herself, Odum's promised testimony was couched in self-defense."  The court noted that in our decision in defendant's direct appeal, we concluded that Odum's statements regarding the stabbing were "inherently self-serving and presumptively unreliable" because she claimed to have stabbed Smikle in self-defense, thereby shifting the blame to others.  State v. Jefferson, (slip op. at 7).  As the PCR court noted, we also

10

concluded that Odum's potential statement of guilt was "not of the sort that would probably change the jury's verdict if a new trial were granted."  Id. at 8.

Third, the PCR court found that, "even in [defendant's] best-case scenario[,] the State would have impeached Odum with Odum's prior denial of guilt to police, thereby weakening Odum's testimony."  "Finally, and perhaps most fatal to [defendant's] PCR" petition, the court found, "evidence that was adduced at trial convincingly identified [defendant] as the assailant."  Thus, the court concluded, defendant was not entitled to PCR.  A March 15, 2021 order memorializes the trial court's decision.

This appeal followed.  Defendant raises the following argument.

> MS. JEFFERSON IS ENTITLED TO RELIEF ON HER CLAIM THAT COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO PRESENT EVIDENCE OF THIRD-PARTY GUILT, INCLUDING PRESENTING VELICIA ODUM – WHO REPEATEDLY CONFESSED TO THE STABBING, SAID SHE WOULD TESTIFY AS SUCH, AND WAS PRESENT DURING TRIAL WAITING TO TESTIFY – AS A WITNESS.

II.

"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus."  State v. Preciose, 129 N.J. 451, 459 (1992).  Under Rule 3:22-2(a), a defendant is entitled to post-conviction relief if there was a "'substantial

11

denial in the conviction proceedings' of a defendant's state or federal constitutional rights." Ibid. "A petitioner must establish the right to such relief by a preponderance of the credible evidence." Ibid. (citing State v. Mitchell, 126 N.J. 565, 579 (1992)). "To sustain that burden, specific facts" that "provide the court with an adequate basis on which to rest its decision" must be articulated. Mitchell, 126 N.J. at 579.

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to the effective assistance of counsel. State v. O'Neil, 219 N.J. 598, 610 (2014) (citing Strickland v. Washington, 466 U.S. 668, 686 (1984); State v. Fritz, 105 N.J. 42, 58 (1987)). To succeed on a claim of ineffective assistance of counsel, the defendant must meet the two-part test established by Strickland, and adopted by our Supreme Court in Fritz. 466 U.S. at 687; 105 N.J. at 58.

Under Strickland, a defendant first must show that his or her attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. Counsel's performance is deficient if it "[falls] below an objective standard of reasonableness." Id. at 688.

12                                                          A-3360-20

A defendant also must show that counsel's "deficient performance prejudiced the defense[,]" id. at 687, because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial. Ibid. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697; State v. Marshall, 148 N.J. 89, 261 (1997). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

"We defer to trial court's factual findings made after an evidentiary hearing on a petition for PCR." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016). "However, we do not defer to legal conclusions, which we review de novo." State v. Holland, 449 N.J. Super. 427, 434 (App. Div. 2017).

Having carefully reviewed defendant's arguments in light of the record and applicable legal principles we affirm the March 15, 2021 order for the reasons stated in the PCR court's thorough and well-reasoned written decision. We add only the following.

Defendant's request for PCR is predicated on her counsel's decision not to call Odum as a witness. Our Supreme Court has observed that "[d]etermining which witnesses to call to the stand is one of the most difficult strategic decisions that any trial attorney must confront." State v. Arthur, 184 N.J. 307, 320 (2005). "[A] defense attorney's decision concerning which witnesses to call to the stand is 'an art,' and a court's review of such a decision should be 'highly deferential.'" Id. at 321 (quoting Strickland, 466 U.S. at 689, 693).

As explained in detail in the PCR court's opinion, there are several reasons why competent counsel might not have called Odum as a witness at defendant's trial. First, although Odum stated in writing and told defense counsel that she stabbed Smikle, she did not confess to the stabbing in a sworn statement prior to the trial. While a sworn statement is not a legal requirement to call Odum as a witness, the absence of such a statement raises the reasonable concern that, if called, Odum would not inculpate herself or exonerate defendant, particularly where, as is the case here, a jury might view the evidence as establishing that Odum and defendant acted in concert to harm the victim. Thus, defendant's counsel was justifiably concerned that Odum's testimony could undermine the defense's strategic decision to argue to the jury that reasonable doubt as to defendant's guilt remained at the close of the State's proofs.

14

Odum's half-hearted effort to take responsibility for stabbing Smikle corroborated defense counsel's concerns. While Odum claims to have gone to the prosecutor's office once to confess, only to be turned away by a receptionist, Odum took no concrete steps to subject herself to criminal prosecution for the crime and to exonerate defendant prior to the trial. In the absence of certainty that Odum would admit to stabbing Smikle and provide exculpatory evidence of defendant's guilt, defense counsel's strategic decision was reasonable.

We also agree with the PCR court's conclusion that defendant did not establish that had Odum been called as a witness, the outcome of the trial would have been different. As the PCR court noted, the State surely would have cross-examined Odum regarding her statement to police immediately after the incident, her failure to confess to the crime in a sworn statement to police or the prosecutor's office prior to trial, and her familial relationship to defendant. In addition, the State adduced significant evidence, including eyewitness testimony, that defendant stabbed Smikle. In light of this evidence, a belated attempt by defendant's sister to take the blame for stabbing Smikle would not likely have resulted in defendant's acquittal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

15